United States District Court
District of Massachusetts

_____
                                   )
**UNITED STATES OF AMERICA,**      )
                                   )
      v.                         )
                                   )   Criminal No.
**JOSEPH GENNACO,**                )   11-10061-NMG
                                   )
      Defendant.                 )
_____)

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Joseph Gennaco ("Gennaco") is awaiting trial subject to a detention order entered by United States Magistrate Judge Leo T. Sorokin. Currently before the Court is defendant's motion for review and revocation of the detention order.

## I.  Background

On February 17, 2011, an 18-count indictment was returned charging Gennaco with wire fraud and mail fraud in violation of 18 U.S.C. §§ 1343 and 1341. The indictment alleges that Gennaco engaged in fraud in connection with his investment of life insurance policies, also known as "life settlements", in which he solicited approximately $4 million from about 20 purported customers.

Gennaco's initial appearance and arraignment took place before Magistrate Judge Sorokin in March, 2011. He was released subject to conditions and a $25,000 unsecured bond.

On October 27, 2011, a 27-count superceding indictment was returned against Gennaco. The superceding indictment listed additional counts of wire and mail fraud, some of which allegedly occurred as late as September, 2011 while Gennaco was on conditional pretrial release. Shortly thereafter, the government moved for revocation of defendant's release and an order of detention pursuant to 18 U.S.C. § 3148(b). The government's motion stated that the superceding indictment provided probable cause to believe that the defendant had committed a federal or state crime while on pre-trial release.

Magistrate Judge Sorokin held an evidentiary hearing on the motion on November 10, 2011 and, at the hearing, allowed the government's motion. Defendant appeals that decision to this Session. After a hearing on the appeal on December 12, 2011, this Court took the motion under advisement. For the reasons stated below, defendant's motion will be denied.

**II. <u>Analysis</u>**

   **A. Legal Standard**

Pursuant to 18 U.S.C. § 3145(b), this Court has jurisdiction to review a pre-trial detention order imposed by a magistrate judge. A district judge engages in <u>de novo</u> review of the contested order. <u>United States</u> v. <u>Marquez</u>, 113 F. Supp. 2d 125, 127 (D. Mass. 2000).

A person who violates a condition of pre-trial release is

subject to a revocation of release, an order of detention and prosecution for contempt of court. 18 U.S.C. § 3148(a). Upon motion from a government attorney, a judicial officer shall enter an order of revocation and detention if, after a hearing, he or she finds:

1) that there is probable cause to believe that the person has committed a federal, state, or local crime while on release <u>or</u> clear and convincing evidence that the person has violated any other condition of release; and

2) that, based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community <u>or</u> that the person is unlikely to abide by any condition or combination of conditions of release.[1]

<u>Id.</u> § 3148(b). A finding of probable cause pursuant to the first prong gives rise to a rebuttable presumption that no conditions will assure that the person will not pose a danger to the safety of the community under the second prong. <u>Id.</u>; <u>United States</u> v. <u>Alfonso</u>, 284 F. Supp. 2d 193, 202-03 (D. Mass. 2003). Once the presumption is triggered, the defendant must produce only "some evidence" to rebut it. <u>United States</u> v. <u>Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1991). Nevertheless, production of such evidence does not cause the presumption to "disappear". <u>Id.</u> "The burden

---

[1] Pursuant to § 3142(g), a court considers: 1) the nature and circumstances of the offense charged, 2) the weight of the evidence as to guilt or innocence, 3) the history and characteristics of the accused, including past conduct and 4) the nature and gravity of the danger posed by the person's release. <u>United States</u> v. <u>Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990).

of persuasion remains on the government and the rebutted presumption retains evidentiary weight." Id.

**B. Application**

**1. The Superceding Indictment**

The original Indictment charges that in March, 2007, Gennaco obtained about $225,000 from Theodore Tarson ("Tarson") to invest in a particular life insurance policy but that Gennaco did not so invest the funds. He allegedly spent all but $40,000 on his own business and personal expenses.

The Superseding Indictment, which was returned by the Grand Jury approximately seven months after Gennaco was arraigned and conditionally released, charges that Gennaco obtained an additional $31,000 from Tarson in April, 2011 by representing, among other things, that the funds would be used to purchase an insurance policy which could be sold to pay back the earlier $225,000 debt. Instead, Gennaco allegedly used the $31,000 for his own personal and business purposes.

The Superseding Indictment also contains allegations that Gennaco defrauded a different victim, Frank James ("James"), who was not listed in the original indictment. It declares that Gennaco obtained approximately $289,000 from James between 2006 and January, 2011 ostensibly to pay James' insurance premiums and invest in a "side fund". To the contrary, however, Gennaco allegedly used all of the funds for his own personal and business

-4-

purposes but persisted in telling James, as recently as September, 2011, that the non-existent "side fund" was still safe.

Finally, the Superseding Indictment alleges that Gennaco defrauded Roberta and Donald Karp ("the Karps") out of about $298,000 between September, 2008 and November, 2010.

### 2. Motion to Revoke and Evidentiary Hearing

The government moved to revoke Gennaco's conditional release, contending that the charges contained in the Superseding Indictment established probable cause that Gennaco committed federal crimes while on release. In support of its motion, the government attached summary charts that show: 1) the deposit of two checks from Tarson to a dormant account of Gennaco's wife, Dorothy, on May 9 and May 31, 2011 and 2) the disbursements from that same account from May 9 through June 6, 2011 of $32,305 for personal expenses. Two disbursements, one of $10,000 and another of $5,000, were paid to Mike Cerulli, Gennaco's prior criminal defense attorney in this action. At the end of the period, the balance in the account was under $2,000.

Gennaco opposed the government's motion, denied committing any new crimes and requested an evidentiary hearing. He also agreed to be subjected to additional, stricter conditions of release as an alternative to revocation.

The following day, Magistrate Judge Sorokin issued an

electronic order scheduling an evidentiary hearing.  The order denied Gennaco's request to subpoena two victims to testify, finding that "there has been an insufficient showing to warrant that request."  It also declared that:

> Assuming the Indictment establishes probable cause, some additional factual context would assist the Court in evaluating the Motion and Defendant's request for continued release on stricter conditions.

At the hearing, the government presented testimony of the case agent, June Foley, who was in charge of the investigation of Gennaco.  She testified with respect to 1) her investigation into the new charges in the Superceding Indictment regarding Tarson and James, 2) Gennaco's several visits to James in New Hampshire between July and September, 2011 and 3) Gennaco's telephone call to the Karps in March, 2011 during which Gennaco expressed his fury that they had been talking to the FBI about the allegations he vigorously denied.  Ms. Foley also confirmed that Gennaco spoke to the Karps at least 13 times through September, 2011 to assure them that their investment was fine and they would be paid.  The Karps have subsequently reported, however, that attempts to recover their money from Gennaco have been unsuccessful.

On cross-examination, Ms. Foley admitted that Gennaco had never asked the Karps not to cooperate with the FBI and that some of the phone calls were initiated by Mr. Karp.  With respect to James, Ms. Foley admitted that he had a life insurance policy in

place and had not been contacted by Gennaco since early October, 2011. Finally, Ms. Foley admitted that Tarson did not tell her that Gennaco specifically represented to him how the $31,000 would be used.

Defense called as a witness Jayne Lawton, who is an investigator with the Federal Public Defender's Office in Boston. She testified that Tarson agreed to give the defendant $31,000 as a personal loan that would be repaid and that Tarson was indifferent as to how the money was used or spent. Specifically, she declared that Tarson did not care if the funds were used for both personal and business investment purposes.

Finally, the Karps both testified that they had been in touch with Gennaco as late as September, 2011, that he knew they were talking with the FBI and that he assured them that their money was safe. Ms. Karp stated that she hoped Gennaco would be stopped so that there would be no more victims.

### 3. Magistrate Judge Sorokin's Findings

At the conclusion of the hearing, Magistrate Judge Sorokin orally revoked Gennaco's release. He found that Gennaco violated the conditions of his release by: 1) traveling to New Hampshire when the order restricted his travel to Massachusetts and Florida, 2) contacting victims or potential witnesses in the subject investigation or prosecution and 3) committing a federal, state or local crime while on release.

The Magistrate Judge concluded that traveling to New Hampshire was not an "innocent" or "de minimis" violation insofar as Gennaco went there several times to meet a customer/client who was a victim. He also concluded that Gennaco knew well enough that other people he contacted were victims or potential victims because they were identified in discovery and Gennaco knew they had been contacted by the FBI.

Magistrate Judge Sorokin then concluded that the $31,000 from Tarson was expended solely for Gennaco's personal benefit when at least some portion of those funds was supposed to have been used to obtain an insurance policy for his benefit. He also noted the suspicious nature of Gennaco's empty assurances to James and the Karps. He concluded that, given the multiple violations and how similar the new criminal conduct was to the conduct which gave rise to the original indictment, there was no condition or combination of conditions that could reasonably assure the safety of the community from continued criminal conduct. Finally, he rejected the additional restrictive conditions proposed by defendant, stating that he had no reasonable option other than to revoke Gennaco's release.

### 4. Gennaco's Appeal

Gennaco asserts in this Court that the detention order should be revoked because the Magistrate Judge erred 1) in determining probable cause, 2) by giving undue weight to the

defendant's negligent violations of release conditions and 3) in determining that there are no conditions which can ensure the safety of the community.

The Court disagrees. First, the superceding indictment gave rise to probable cause that the defendant had committed a crime while on pre-trial release, which supports the rebuttable presumption that no conditions can assure he will not pose a danger to safety. See United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986) ("[A] grand jury indictment is sufficient to establish probable cause for purposes of triggering the rebuttable presumptions in § 3142.").

Gennaco offered evidence that the $31,000 from Tarson was entirely a personal loan to be spent at his own discretion. The government responded with evidence that at least part of that loan was supposed to have been used for Tarson's benefit. The Magistrate Judge agreed with the government. He concluded that, because Gennaco had persisted in the same kind of criminal conduct toward an individual expressly named in the original indictment, the imposition of more stringent conditions of release would be futile and could not assure the safety of the community. Given the government's showing and the effect of the rebuttable presumption, this Court finds the Magistrate Judge's conclusion eminently reasonable and will not disturb it.

Second, Gennaco admits that he violated the restriction on

travel and the prohibition against contacting victims or potential victims.  He contends that those relatively minor violations are not, however, of a nature or degree to support a conclusion that he cannot comply with more restrictive conditions of release.  He asserts that the travel violations resulted from his failure to read carefully and understand the order and that the no-contact violation resulted from an ambiguity inherent to the order itself.

The Magistrate Judge carefully considered but rejected those same arguments and the Court concurs that they were rightfully rejected.  Gennaco's violations resulted not from excusable neglect but rather from a conscious decision to persist in prohibited activity.  His explanation is disingenuous and given the history of this case, Gennaco's assurances of future compliance with conditions fail to inspire confidence.

### ORDER

In accordance with the foregoing, the defendant's motion to revoke the detention order (Docket No. 21) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 14, 2011